
Tax Credit Solutions

**CONFIDENTIAL**
**Acquisition Proposal & Agreement**

February 24, 2012

Mr. Dan Bythewood
Park Square Homes I, LLC
237 West 35th Street, 4th Floor
New York, N.Y. 10001

    Re: Park Square Homes I, LLC (the "Company")
        239 Units – Baltimore, MD

Dear Mr. Bythewood:

Thank you for giving us the opportunity to present this proposal to you. This proposal sets forth our understanding of the basic business terms to be included in an operating agreement (the "Operating Agreement") by and between IFG, LLC, or its designees, ("IFG"), and Park Square Homes I, LLC, a Delaware Limited Liability Company, or its designees (the "Managing Member" or the "General Partner", or "GP"), and TaxcreditcoXXX LLC (name TBD), a Delaware Limited Liability Company (the "Company"), regarding the proposed 80/20 housing development in Baltimore, MD. IFG is sometimes referred to herein as the "LP" or "Investment Partnership".

A.   BASIC INFORMATION

    1.   Partnership Interest to be acquired

        The proposal is based upon the acquisition of a 99.99% interest in the Partnership by IFG.

    2.   Tax Credits Acquired

| | |
|---|---:|
| Amount of Federal Tax Credits | $4,755,930 |
| Percentage of Limited Partnership Interest | 99.99% |
| Federal Tax Credits Acquired by IFG | $4,755,454 |

B.   TOTAL DEVELOPMENT COSTS

| | |
|---|---:|
| Estimated Total Development Costs: | $76,469,063 |

Any increase in Development Costs above $76,469,063 is the responsibility of the General Partner or Guarantor to fund. Cost savings generated by the Partnership prior to the final audit, preparatory to filing the 8609, which IFG approves, will be distributed to the Company.

Exhibit 40 to Verified Complaint

Poppleton LLC- IFG LOI
February 24, 2012
Page 2 of 8

C. <u>EQUITY INVESTMENT</u>

    1. Amount of IFG's Equity Investment

IFG will pay the Partnership $.95 per $1.00 of Section 42 tax credit or a total of $4,517,680. This is based upon the purchase of a 10-year stream of federal tax credits totaling $4,755,930. The actual equity payment by IFG will be adjusted up or down based on the actual amount of tax credits received by the Partnership using the rate of $.95 per $1.00 of Section 42 tax credit.

    2. IFG will invest in the Partnership as follows:

        a. Initial Capital Contribution

IFG will invest $858,913 or 19% of its equity in the Partnership ("Initial Capital Contribution". These funds will be available after partnership closing and will be used to pay third party costs including those related to land acquisition. Disbursements will be made pursuant to monthly draw procedures. A schedule of funding will be prepared along with the Operating Agreement.

        b. Additional Capital Contributions by IFG

The following applies:

1. Upon 90% completion, $300,000 or 15% of its equity amount, will be paid on a draw basis, but not before April 2013. This will be the "First Additional Capital Contribution."

2. Upon achievement of the following and not before October 2014 (i) receipt of the Temporary Certificate of Occupancy and Construction Completion for the development, evidence of lien free completion, and not before 12 months after partnership closing, (ii) receipt of an audited cost certification of final Eligible Basis, (iii) conversion of the construction loan to permanent financing, (iv) for a period of (3) three consecutive calendar months, 90% occupancy and a Debt Coverage Ratio of 1.15 based on the actual Debt Service ("Stabilization"), and (v) upon satisfactory completion of all requirements as set forth in the Operating Agreement in IFG's standard form Operating Agreement, IFG will invest $660,000 or 15% of its equity in the Partnership (the "Second Additional Capital Contribution"). The Fourth Additional Capital Contribution shall be used to pay third party costs and/or repay a portion of the Construction Loan.

3. Upon achievement of the following and not before January 2014 (i) satisfactory completion of all requirements for funding of the Fourth Additional Capital Contribution, (ii) for an additional period of (3) consecutive calendar months, 90% occupancy and a Debt Coverage Ratio of 1.15 based on the actual Debt Service, (iii) upon satisfactory completion of all requirements as more fully set forth in the Operating Agreement and; (iv) the Operating Reserve and Replacement Reserve Accounts will be funded in the amount of $421,000, IFG will invest an additional $220,000 or 5% of its equity (the "Third Additional Capital Contribution") in the development.

    4. Upon achievement of the following and not before April 2014 (i) receipt of Form(s) 8609, IFG will invest an additional $2,258,767 or 55% of its equity (the "Fourth Additional Capital Contribution") in the development.

### D. DEVELOPMENT FEE

The development fee is estimated at:   $6,929,006

If there is a gap between the total Permanent Sources and total Permanent Uses, a portion of this fee will be dedicated as a Permanent Source by the Development General Partner in the form of a Deferred Developer Fee (the "DDF"). The DDF will bear interest at a rate equal to the long-term AFR and will be returned from available cash as set forth below. A special tax allocation of the interest expense will be made to the General Partner. The General Partner will make an annual contribution in an amount to pay the accrued interest. In the event that any portion of the DDF remains after the thirteenth year, the Development General Partner will make a special contribution to the partnership to pay such amount necessary to cover any accrued interest and unpaid principal due under the DDF. The remaining portion of the developer's fee will be paid as follows:

The fee will be paid as follows:  $2,000,000

| | | |
|---|---|---:|
| 1. | At Closing (30%): | $600,000 |
| 2. | Upon Funding of the Fourth Capital Contribution (7%) | $300,000 |
| 3. | Upon Funding of the Fifth Capital Contribution (33%): | $660,000 |
| 4. | Upon Funding of the Sixth Capital Contribution (11%): | $220,000 |
| 5. | Upon Funding of the Seventh Capital Contribution (11%): | $220,000 |
| | Total: | $2,000,000 |

### E. DISTRIBUTION

Distributions noted below relate to all Net Cash distributions. All Net Cash Flow will be accumulated and not distributed until Stabilization. Distributions will be made as follows after certain priorities set forth in IFG's Standard Form Partnership:

1. Advances and loans made by IFG (excluding capital contributions);

2. Payment to the LP to cover any Tax Credit shortfalls;

3. While Operating Deficits Loans exist;
   a. 80% to the payment of the loan with no interest accrual and then;
   b. the balance to the Company;

4. At the full payment of the Operating Deficits Loans:
   a. 80% to the Development General Partner up to an annual (non-cumulative) maximum of 16% of the projected gross collected rents at stabilization as an Incentive Management Fee, and then;
   b. the balance to the Company.

F. **SALE OR REFINANCE**

Upon sale of the Apartment Complex or a refinancing of the permanent mortgage loan, proceeds will generally be allocated in accordance with the following priority:

1. Expenses of the sale and/or refinance and satisfaction of underlying financing plus any other third party obligations and debts;
2. Payment of any advances or loans made by IFG (excluding capital contributions);
3. To the LP to cover any Tax Credit Shortfalls;
4. To pay any outstanding balance of any Operating Deficit Loans;
5. To pay any outstanding interest and principal on the Affiliate Loan; and,
6. The balance to the Company..

G. **HARD DEBT**

The project has applied for a permanent First Mortgage of $50,337,133 from VHFA. The structure and terms of this loan have not been finalized. In order to avoid a potential negative equity gap, the aggregate total of all mortgages, except for soft debt outlined below, that can be placed on the property is estimated at $50,337,133 based upon the projected rent levels and operating expenses. The maximum loan amount, that must be paid from cashflow, has been calculated based on an amortization of 480 months, an interest rate of 4% and a projected debt amount to balance the equity with a minimum coverage ratio of 1.15. The actual debt sizing will be subject to the approval of IFG.

H. **GUARANTEES**

At a minimum, the Managing Member and Park Square Homes I, LLC (collectively, the "Guarantors") will jointly and severally guarantee:

1. Against recapture of the Section 42 Tax Credits for the compliance period following the filing of the Form 8609's. The guarantee shall not apply to amounts due to a change in law after the date hereof with which the GP is unable to comply despite the exercise of its good faith and reasonableness efforts;
2. The payment in full of all costs and expenses of the development of the Project through stabilization in excess of the total budgeted sources available there from;
3. Against a shortfall in actual Section 42 Tax Credits below the amount of the projected Section 42 Tax Credits during the tax credit compliance period following the filing of forms 8609;
4. Against Operating Deficits through non-interest bearing loans ("Operating Deficit Loans") for four (4) years after achievement of the Stabilization Requirement. The maximum operating deficit guarantee liability will be capped at a total of $12,060 per unit or 9 mos of expenses plus hard and soft debt service. (Dilution Provisions will apply for the period after expiration of the Operating Deficit guarantee period to the extent that the Guarantors do not fund 50% of the operating deficits pursuant to interest – bearing loans ("GP Loans") after the Cap or Guarantee period are surpassed);
5. The obligations of the Borrower to fund any Permanent Loan Shortfall;

Poppleton LLC- IFG LOI
February 24, 2012
Page 5 of 8

6. Fraud, material misrepresentation and willful misconduct of the General Partner, and any affiliated management company and/or General Contractor; and

7. The obligations of the General Partner under the Operating Agreement.

8. Provide a Master-lease for the commercial spaces and parking income to the partnership.

I. <u>IFG FEES</u>

1. Asset Management Fee

The Partnership will pay a fee of $23,900 (the "Asset Management Fee") to IFG, or its designee, on an annual basis beginning the first year rental revenue is received. The Asset Management Fee will be paid only out of Cash Flow as a normal operating expense of the Partnership.

2. Environmental Fees

IFG will absorb $10,000 of the costs of our environmental review as invoiced by our environmental consultant (the "LP Environmental Fees"). The Partnership also will pay all LP environmental fees in excess of $2,500 and will add a sufficient amount to this line item of the development budget to accommodate these costs.

3. Due Diligence Fees

The General Partner will reimburse IFG for those customary due-diligence and legal costs up to $75,000.

J. <u>ADJUSTERS-DELAYS</u>

Any delay in the delivery of annual tax credits will result in the reduction of the next capital contribution by the amount equal to 95 cents times the difference of the requisite credit delivery for the delay in tax credits. If the remaining capital contribution is insufficient, the General Partner(s) will contribute the difference.

K. <u>MISCELLANEOUS</u>

1. Previous or Pending Equity Offers

IFG will promptly receive copies of any equity proposals that have been executed by the Partnership or General Partner to be able to review them for termination provisions. Should any signed proposals or agreements exist, the General Partner, and its owners will fully indemnify IFG and the Partnership from any lawsuits or damages that may result from the termination of said agreements.

2. Exclusivity

The General Partner and the above-named Section 42 Tax Credit Partnership agree to give IFG an exclusive right to invest in the above-named development until 30 days after receipt of all due diligence documents.

3. Acceptance

This Acquisition Agreement must be executed by the parties and received by IFG before the end of business on March 28, 2012 or this proposal is subject to renegotiation.

Poppleton LLC- IFG LOI
February 24, 2012
Page 6 of 8

4. Distributions of cash and allocations of income gain or loss shall be in accordance with tax law.

5. Management Fee

   IFG allows a maximum 5.5% management fee (the "Management Fee") to be charged to the Partnership's operating account.

6. Tax Credit Delivery
   The partnership shall obligate the GP to deliver 50% ($291,140) of the annual federal tax credits in 2013 and 100% ($582,280) of the annual credits shall be delivered each year thereafter (the Tax Credit Delivery Schedule). The Tax Credit Delivery Schedule assumes a partnership closing and first draw on the Initial Capital Contribution on or before July 30, 2012. For each month the Partnership has not closed and the Initial Capital Contribution has not been drawn after July 30, 2012, the 2013 Tax Credit Delivery Schedule shall be reduced 8.3%. Additionally, for each month the Partnership has closed and the Initial Capital Contribution has been drawn prior to July 30, 2012, the 2013 Tax Credit Delivery Schedule shall be increased by 8.3%.

7. Operating Reserve
   The Operating Reserve, estimated to be $2,258,767 and subject to Investor approval, shall be funded from the Fourth capital contribution with 50% to be released to GP in 2022 once a DSCR of 1.15 had been achieved; the remainder shall be maintained at the funded amount throughout the compliance period. This reserve will be replenished from available cash-flow and all earnings shall remain in the Partnership for the full compliance period. Draws on the operating reserve account can only be used for operating deficits or for specific uses that benefit the Project and will require the consent of the Limited Partner. Draws from this account will not be permitted until all funding obligations under the operating deficit guarantee (Section I. 4) are satisfied.

8. Replacement Reserves
   The partnership shall set aside a reserve for replacements from cashflow equal to $300 per unit, per year with annual increases equal to 3.00% (the "Replacement Reserve").

The offer was based on the preliminary information that you provided to IFG

IFG's obligation under this proposal is contingent upon:

   (i) a satisfactory site visit;
   (ii) the accuracy and verifiability of the assumptions data provided;
   (iii) appropriate and satisfactory due diligence documentation and review, including financial information for the Guarantors, and,
   (iv) the approval of the IFG investment committee.

This offer is based on the preliminary information that you provided to IFG. This letter highlights certain material terms of our agreement but does not contain all the business terms which would be

Poppleton LLC- IFG LOI  
February 24, 2012  
Page 7 of 8

set forth in an Operating Agreement. Therefore, IFG's obligations hereunder are further contingent upon the negotiation of an Amended and Restated Agreement of Limited Partnership in a form mutually acceptable to you and IFG.

By executing this letter and in consideration of IGF's entering into this proposal, you agree, on your own behalf and on behalf of your affiliates, officers, directors, and employees and on behalf of any other partners or joint ventures who are or will be involved in the development of the West Virginia VA LLC: (1) not to disclose any of the terms or provisions contained in this proposal to any other person or entity; unless such disclosure is approved in advance by IFG and, (2) that IFG may undertake credit, background and similar checks on you, your principals and your major affiliated companies.

(remainder of page intentionally left blank)

Poppleton LLC- IFG LOI
February 24, 2012
Page 8 of 8

If the above is acceptable, please cause this agreement to be executed in triplicate; one original should be retained and two originals returned to this office. Once received, IFG will prepare an Operating Agreement and other related documents upon which we will acquire the interest in the Partnership discussed herein.

Again, thank you for your time and consideration. We look forward to working with you in the future.

Sincerely,
IFG, LLC

*[signature]*

Ian G. Arias, Senior Vice-President

*[signature]*

AGREED AND ACCEPTED:
Dan Bythewood, ~~CEO~~ *President*

By: *Dan Bythewood, Jr.*

Date: *March 20, 2012*

By executing this letter and in consideration of IFG's entering into this proposal, you agree, on your own behalf and on behalf of your affiliates, officers, directors, and employees and on behalf of any other partners or joint venturers who are or will be involved in the development of the Apartment Complex, not to disclose any of the terms or provisions contained in this proposal to any other person or entity. In addition, you agree that IFG may undertake credit, background and similar checks on you, your principals and your major affiliated companies, which you represent as follows:

| Name | SSN or EID Number | Signature Approval |
|------|-------------------|--------------------|
|      |                   |                    |
|      |                   |                    |
|      |                   |                    |