# GORDON·FEINBLATT LLC
## ATTORNEYS AT LAW

DANIELLE STAGER ZOLLER
410.576.4036
Fax 410.576.4182
dzoller@gfrlaw.com

233 EAST REDWOOD STREET
BALTIMORE, MARYLAND 21202-3332
410.576.4000
www.gfrlaw.com

April 23, 2012

**VIA E-MAIL AND HAND DELIVERY**
Department of Housing and Community Development
417 E. Fayette Street
Baltimore, Maryland 21202
Attn: Peter Engel, Deputy Commissioner

Re: Poppleton Redevelopment Project - Land Disposition and Development Agreement dated September 27, 2006 (the "LDDA")

Dear Peter:

Our clients, Poppleton Development I, LLC (the "Developer") and LaCite Development, LLC (collectively with the Developer, the "Development Team") are in receipt of your letter dated April 18, 2012.

First and foremost, we disagree that the Developer has not already met the requirements of Section 1.7(a) of the LDDA. The Development Team has submitted a significant amount of information and documentation concerning its financing to the Department over the years since the LDDA was signed and more recently to the Department's consultant MuniCap, Inc. in connection with the preparation of the TIF application. Moreover, the Developer is ready, willing and able to proceed with closing on the Phase I Properties that the City has acquired and cleared to date. In fact, the Developer has the cash available to close on Phase I immediately.

As you know, the Developer's total budget for the acquisition and development of Phase I is approximately $135,000,000. This will cover the construction of approximately 454 units of rental housing and 93,000 square feet of commercial and retail space, as well as all required residential and commercial parking, on more than 4.5 acres of land. Of course, the Developer intends to construct Phase I in subphases over a number of years, as is (1) permitted and expected under the LDDA, (2) customary in any large construction project of this nature, and (3) warranted based upon the market demand study provided to the Department in November 2011. Accordingly, the Developer has submitted more detailed information and financing letters for Phase 1A, the cost of which will be approximately $75,000,000. The Developer has also submitted budgets and sources and uses for Phase IB and the entire Project from time to time. However, you imply by your letter that the Developer must have all of the $135,000,000 for Phase I in hand by April 25, 2012 in order to satisfy Section 1.7(a). This is an unreasonable and

Exhibit 45 to Verified Complaint

GORDON·FEINBLATT<sub>LLC</sub>
ATTORNEYS AT LAW

Department of Housing and Community Development
April 23, 2012
Page 2

arbitrary interpretation of the LDDA. It is particularly unreasonable to expect financing commitments for improvements that will be constructed years from now. The Poppleton market could not absorb so much new housing all at one time, as evidenced by the market demand study.

Throughout the course of the Project, the Developer has diligently worked with lenders, private investment funds, equity investors, and grant funding agencies to pursue a wide variety of funding for the Project. The Developer has provided to the Department letters from numerous funding sources over the years. However, due to the continued delays by the City in acquiring and clearing the Properties in Phase I, financing commitments previously obtained have expired as the Developer waited for the City to complete its obligations. More recently the Developer has pursued funding through the issuance of tax exempt bonds through the Maryland Department of Housing and Community Development's ("MDHCD") Multifamily Bond Program instead of HUD because of the Department's negative and unsupportive position with respect to the Project at the Developer's HUD meetings last year. With respect to the funding for Phase IA, we are sure that you are aware that the Developer has already submitted Form 202 to MDHCD and that the Development Team has had a number of meetings with MDHCD. While the Development Team has been working through that process simultaneously with the preparation of the TIF application, the Developer has already received and submitted to the Department a plan of finance from BB&T Capital Markets to underwrite the bonds. Or course, the Developer could have started this process in early 2011 had the City not continually delayed discussions concerning the proposed TIF and been unwilling to proceed with the TIF process prior to the election.

We would like to note that the LDDA contemplates several sources of public financing, including HUD financing, TIF, historic tax credits, and redevelopment bonds, in no particular proportion to equity financing. Moreover, Section 1.17 of the LDDA provides that the Department will in good faith seek to assist the Project through various public financing sources and that the City will support the designation of the Project for tax increment financing. The Department's unsupportive position with respect to the Developer in its pursuit of HUD financing, as well as the City's current refusal to move forward with the Developer's TIF application, is in direct violation of their obligations under the LDDA. The fact that the Developer's financing may be complex is not relevant to its ability to construct the improvements. Furthermore, the Development Team fully understands the regulatory requirements associated with its proposed funding and has extensive experience dealing with complex financing and public financing sources, as summarized in the TIF application.

The Department may not unilaterally change the LDDA or require information not otherwise contemplated by the LDDA. No where in the LDDA does it say that the Developer must provide the Department with the detailed information that the Department has demanded by April 25. Moreover, after working on the Project for so many years, your letter is the first time that the Department has ever told the Development Team that the Department may consider the

GORDON·FEINBLATT LLC
ATTORNEYS AT LAW

Department of Housing and Community Development
April 23, 2012
Page 3

Developer's financing sources or financing letters to be inadequate. The Department should have shared its concern with the Developer long ago. The Development Team has always responded promptly to requests for information in the past. The Development Team would be happy to schedule a meeting to discuss with you the financing structure. In the meanwhile, we expect the Department and the City to abide by its obligations set forth in the LDDA and to act reasonably, in good faith, and fairly with respect to its dealings with the Developer. For the Department to expect a response to its demand in such a short time is unreasonable. And for the Department to delay the TIF application process again is unnecessary. We had expected the Department to submit the TIF application to the Board of Finance by now and further expect the Department to submit the TIF application to the Board of Finance immediately, as required by Section 1.17(a) of the LDDA.

The Department was aware that the Developer wanted to proceed with the TIF early last year and to close on the acquisition of Phase I before the end of 2011. However, it should be noted that the City did not clear all of the Properties in Phase I until some time in 2012, and therefore the City was not even able to close on certain of the Properties in Phase I in accordance with Section 1.5(b) of the LDDA until very recently. In fact, the Developer still has not received notice from the City stating that the City has completed all of its obligations with respect to closing on the Phase I Properties. The closing "extension" that the Department unilaterally adopted at the end of 2011 was self-serving, but the Developer was willing to wait until the remaining Properties were cleared and the Department was finally focused on the TIF application. We had thought that a 4 month extension would keep the Department's feet to the fire, given the Developer's experience last year. For the Department to now threaten a default by the Developer is ridiculous when, among other things, (1) the City is still not able to comply with the LDDA at closing because it does not control all of the Properties in Block 157, as required by Schedule A of the LDDA, and (2) the Department and the City have purposely caused delays for the Developer, thus constituting events of force majeure under the LDDA.

The Developer's Project will revitalize a community long subject to blight, decay, abandonment, neglect and criminal activity. The Project will ultimately consist of 1,300 to 1,800 housing units (including a significant percentage of work force and mixed-income housing), 150,000 square feet of commercial space, parking, municipal space, a charter school, and active and passive green space. The Developer has already invested millions of dollars in the Project in reliance on the City's obligations under the LDDA to convey the Properties within the Project Area to it, to act in good faith, and to support the Project. The Development Team has already lined up tenants, obtained a commitment for a new healthy grocer to alleviate Poppleton's food desert, and engaged partners to provide job training and job creation programming to benefit the community. The Project will advance key goals of the City, the Mayor, and the Citywide Master Plan. This is exactly the type of Project that the Department and the City should encourage and be supportive of.



Department of Housing and Community Development
April 23, 2012
Page 4

Accordingly, we expect the Department to agree to a mutually beneficial extension of the closing date so that the TIF process may proceed as originally contemplated and be completed prior to closing. Please confirm in writing by the close of business on April 27, 2012 that the Department intends to execute a further closing extension. In the alternative, we expect the City to be prepared to close on the Phase I Properties by May 1, 2012.

Please feel free to call me if you have any questions.

Sincerely,

Danielle Stager Zoller